UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

----------------------------------------------------X     16 CV 00473 (SJF)(SIL)

DAWN GALLAGHER,

                    PLAINTIFF,

-AGAINST-

BOARD OF EDUCATION OF EAST HAMPTON UNION

FREE SCHOOL DISTRICT,

                    DEFENDANT

--------------------------------------------------------X

MEMORANDUM OF LAW IN OPPOSITION TO

DEFENDANT'S MOTION TO DISMISS COMPLAINT

AND APPLICATION TO FILE AMENDED COMPLAINT

LAWRENCE ELLIS KELLY LK 7072

11 CEDAR BAY COURT

BAYPORT NEW YORK  11705

631 472 0890

## TABLE OF CONTENTS

TABLE OF AUTHORITIES...............................................................

PRELIMINARY STATEMENT............................................................

STATEMENT OF FACTS.....................................................................

POINT 1

PLAINTIFF CROSS MOVES FOR LEAVE TO FILE AMENDED COMPLAINT

 PLAINTIFF REQUEST THE COURT APPROVE THE FILING OF THE

AMENDED COMPLAINT AND VACATE DEFENDANT'S MOTION TO

DISMISS AS MOOT

POINT 2

PROCEDURAL DUE PROCESS CLAIM IS VALID AND DISMISSAL SHOULD

NOT BE GRANTED

POINT 3.

AMENDED COMPLAINT PROVIDES A SUBSTANTIVE DUE PROCESS

CLAIM ARISING FROM LENGTHY SUSPENSION WITHOUT PAY

ARISING FROM AN ARBITRARY AND CAPRICIOUS EXERCISE OF

PUBLIC SCHOOL BOARDS' POWER AND RAISES IMPORTANT

INTERESTS ACCORDED PROTECTION OF SUBSTANTIVE DUE

PROCESS

POINT 4.

PLAINTIFF SUBMITS SPECIFIC FACTUAL SUPPORT IN THE

AMENDED COMPLAINT ADDRESSING DEFENDANTS ARGUMENTS

AS TO FIRST AND FOURTEENTH AMENDMENT CLAIMS

CONCLUSION .......................................................................................

## TABLE OF AUTHORITIES

Bishop v Wood

423 U.S. 341, 350 (1976)..............................................................5

Bodie v Connecticut

401 U.S. 371, 379 (1971)_____2

Cleveland Board of Education v Loudermill

470 U.S. 532 (1985) _____2,4,5

Foman v Davis

371 U.S. 178, 182 (1962) ................................................................-v-

Foucha v Davis

112 S. Ct. 1780, 1785 (1992)_____5

Gargiul v Tomkins

704 F2d 661,668 (2d Cir. 1983) vacated on other grounds

465 U.S. 1016 (1984)_____6

Goetz v Windsor Central School District

698 F2d 606,610 (2d Cir. 1983) _____2

-iii-

Komlosi v New York State Office of Mental Retardation

And Developmental Disabilities

1194 US Dist Lexis 11864 * 22_____3

Lawrance v Achtyl

20 F 3d 529,537 (2d Cir. 1994)_____5

Murphy v Wack

SDNY 1991 : 1991 US Dist Lexis 5274 _____2,3,4

Szoke v Carter

165 FRD 34, 1996 US Dist Lexis 2217 (SDNY 1996) _____3,4

-iv-

## PRELIMINARY STATEMENT

Plaintiff moves pursuant to Federal Rule of Civil Procedure Rule 15(a) for leave to file an Amended Complaint.  Plaintiff attaches a copy of the proposed Amended Complaint.  FRCP Rule 15(a) contemplates that a court will freely grant leave to file an Amended Complaint when the interests of justice so requires. Foman v Davis 371 U.S. 178, 182 (1962). Defendant neither consents to nor opposes the Plaintiff's application.  The Amended Complaint lays out specifics which the Defendant's Motion to Dismiss alleges were absent from the Original Complaint. The email excerpts in the Amended Complaint identify specific actions by the defendants which sought to undermine First Amendment rights , and the addition of a Substantive Due Process claim more accurately identifies federal constitutional rights supported by the factual allegations of the original Complaint.

## STATEMENT OF FACTS

Point 1

PLAINTIFF CROSS MOVES FOR LEAVE TO FILE AMENDED COMPLAINT: PLAINTIFF REQUESTS THE COURT APPROVE THE FILING OF THE AMENDED COMPLAINT AND VACATE DEFENDANTS MOTION TO DISMISS THE ORIGINAL COMPLAINT AS MOOT

As indicated above, Plaintiff seeks leave to file an Amended Complaint which addresses the alleged inadequacies of the initial Complaint made a subject of the Defendant's Motion to Dismiss. Plaintiff adds a Substantive Due Process claim based on the same set of facts, and broadens the presentation of evidence of the specific tactics utilized by the Defendant to undermine Plaintiff's Constitutional rights, including excerpts of the email exchanges between the Superintendent of Schools, School Board member Anderson and defendant's agent in place, a person delineated as ( ).

-1-

POINT 2

PROCEDURAL DUE PROCESS RIGHTS CLAIM IS VALID
UNDER CLEARLY ESTABLISHED CASELAW AND DISMISSAL
SHOULD NOT BE GRANTED

In Cleveland Board of Education v Loudermill 470 U.S. 532 (1985), the
Supreme Court stated "The right to due process is conferred not by
legislative grace, but by constitutional guarantee." Loudermill 470 U.S.
at 541. The root requirement of the Due Process Clause is that "an
individual be given an opportunity for a hearing before he is deprived of
any significant property interest." Loudermill 470 U.S. at 542, citing
Bodie v Connecticut 401 U.S. 371, 379 (1971).

 Under Second Circuit caselaw, analysis of a due process claim must go
beyond a collective bargaining agreement. Even if a collective
bargaining agreement does not provide for same, the Court must
consider whether a property interest in continued public employment is
protected by the constitutionally minimum due process the employee
(Gallagher) is due under federal law. Goetz v Windsor Central School
District 698 F2d 606, 610 (2d Cir. 1983), Murphy v Wack  (SDNY 1991)

-2-

1991 U.S. Dist. Lexis 5274. Where a public employee is suspended without being afforded any opportunity whatsoever to first respond to the charges against, him, the employee (Gallagher herein) is deprived of his constitutional rights. Murphy v Wack (SDNY 1991) (Judge Kimba Wood Decision 1991 U.S. Dist. Lexis 5274).

The opinion in Szoke v Carter 165 F.R.D. 34, 1996 U.S. Dist. Lexis 2217 (S.D.N.Y. 1996) is illustrative of plaintiff's point. In that decision, Judge Parker cited Civil Service Law 75(3) as providing a remedy where the employee is "acquitted of incompetency or misconduct", but indicates that "we might have reached a different conclusion if 75(3) had not been the law..." "since "the thirty day limitation and the guarantee of pay restoration adequately protects property interests of public employees." Szoke v Carter 165 F.R.D. at 37, citing Komlosi v New York State Office of Mental Retardation and Developmental Disabilities 1994 U.S. Dist LEXIS 11864 *22, 1994 WL 465993 at *7.

In this factual circumstance (Gallagher), where there is no "acquittal", but rather an abdication of the continuation of the seven month suspension without pay by the defendant Board of Education, an

-3-

"indefinite suspension without pay...could reasonably be found to be a deprivation of a property right." Szoke v Carter 165 F.R.D. at 37 Under New York law, a suspension for an initial thirty day period must be independently accompanied by the providing of an opportunity to contest the charges.  Failing that, a due process property right is violated, even in the initial thirty day period. As Judge Wood found in Murphy v Wack  "Given that Murphy was suspended without being given any opportunity whatsoever to first respond to the charges against him, I find that Murphy was deprived of his constitutional rights . Although defendant points out that Murphy was not terminated but was only suspended, it is clear from Loudermill that due process must be afforded to an employer (sic) who is to be suspended without pay." 1991 U.S. Dist LEXIS 5274 *13 ... Affording the employee an opportunity to respond prior to termination would impose neither a significant administrative burden nor intolerable delays ... In those situations where the employer perceives a significant hazard in keeping the employee on the job, it can avoid the problem by suspending with pay... the essential requirements of due process...are notice and an

-4-

opportunity to respond. The opportunity to present reasons, either in person or in writing, why proposed actions should not be taken is a fundamental due process requirement."Loudermill 470 U.S. at 544-546, cited by Judge Wood at 1991 U.S. Dist LEXIS 5274 *14

POINT 3

AMENDED COMPLAINT PROVIDES A SUBSTANTIVE DUE PROCESS CLAIM ARISING FROM LENGTHY SUSPENSION WITHOUT PAY ARISING FROM AN ARBITRARY AND CAPRICIOUS EXERCISE OF PUBLIC SCHOOL BOARD'S POWER AND RAISES IMPORTANT INTERESTS ACCORDED PROTECTION OF SUBSTANTIVE DUE PROCESS

Substantive due process protects individuals against government action that is arbitrary, conscience shocking or oppressive in a constitutional sense. Bishop v Wood 426 U.S. 341, 350 (1976) . Government action can be so arbitrary that it violates substantive due process regardless of the fairness of the procedures used. Foucha v Louisiana 112 S. Ct. 1780, 1785 (1992), Lawrance v Achtyl 20 F3d 529, 537 (2d Cir. 1994).

The Fourteenth Amendment protects public employees from arbitrary

-5-

and capricious government action affecting their employment. Gargiul v

Tompkins 704 F2d 661, 668 (2d Cir. 1983) , vacated on other grounds

465 U.S. 1016 (1984)(lengthy suspension without pay resulting from an

arbitrary and capricious exercise of public school board's power

resulted in substantive due process violation). Inclusion of a

substantive due process claim in the Amended Complaint is proper.


POINT 4

PLAINTIFF SUBMITS SPECIFIC FACTUAL SUPPORT IN THE AMENDED

COMPLAINT ADDRESSING DEFENDANTS ARGUMENTS AS TO FIRST

AND FOURTEENTH AMENDMENT CLAIMS

Plaintiff states First and Fourteenth Amendment claims for violation of

rights to freedom of speech, freedom of association and freedom of

assembly. In the Amended Complaint, the plaintiff more fully exposes

the unconstitutional actions of the defendants herein. Excerpts of

emails outline the use by the defendant Board of Education of an

individual identified in the Amended Complaint as ( ) , an operative used

-6-

by the Defendant to change the personal interactions, provide
investigative interviews and summaries of the private conversations of
employees of the Transportation Unit while not disclosing the
operative's identity or purpose.

Plaintiff submits that the Amended Complaint and the fuller exposition
of the details underlying the claims made in the initial Complaint
answer the contentions raised by the defendant in their motion to
dismiss, and the instant defendant's motion is made moot by the filing of
the Amended Complaint.

Plaintiff submits that, in addition to the allegations specified above, the
"No Trespass" Orders to suspended school district employees including
Dawn Gallagher covering every building and every property of the
School District are overbroad exclusions from public property which are
violative of Plaintiff's First and Fourteenth Amendment rights.

## CONCLUSION

Plaintiff requests leave of the Court to file the Amended Complaint.
Plaintiff submits that the filing of the Amended Complaint makes the
contentions of the instant Motion to Dismiss moot.

-7-

August 10, 2016

Lawrence Ellis Kelly  LK 7072

Attorney for Plaintiff Dawn Gallagher

11 Cedar Bay Court

Bayport New York  11705

631 472 0890

-8-

AMENDED COMPLAINT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X

DAWN GALLAGHER,

          Plaintiffs,

-against-                              PLAINTIFF DEMANDS
                                           TRIAL BY JURY

BOARD OF EDUCATION OF EAST HAMPTON
UNION FREE SCHOOL DISTRICT,               AMENDED COMPLAINT

              Defendants.            16-0473 (SJF)(SIL)
_____X

DAWN GALLAGHER, by her attorney LAWRENCE ELLIS KELLY, brings this action
under 42 USC 1983 as against the BOARD OF EDUCATION OF EAST HAMPTON
UNION FREE SCHOOL DISTRICT under 28 USC 1331 and 28 USC 1343.

1.  DAWN GALLAGHER is a resident of Suffolk County New York.

2.  BOARD OF EDUCATION OF EAST HAMPTON UNION FREE SCHOOL DISTRICT
    is a political subdivision of the State of New York, a municipal corporation
    organized and existing under the laws of the State of New York.

3.  BOARD OF EDUCATION OF EAST HAMPTON UNION FREE SCHOOL DISTRICT
    employs school bus drivers to handle the transportation needs of the School
    District students.

4.  BOARD OF EDUCATION OF EAST HAMPTON UNION FREE SCHOOL DISTRICT
    owns or leases a piece of property called the 'Bus Barn" in East Hampton
    New York., which is the former Schaefer Bus Company property.

5.  The "Bus Barn" is a facility utilized for the maintenance, fueling, and storage
    of school buses used in transporting students of the EAST HAMPTON UNION
    FREE SCHOOL DISTRICT.

6.  The "Bus Barn" includes a heated area utilized for clocking in, clocking out,
    meetings and down time interaction of the employees involved in the
    transportation of students in the EAST HAMPTON UNION FREE SCHOOL
    DISTRICT.

7.  BOARD OF EDUCATION OF THE EAST HAMPTON UNION FREE SCHOOL
    DISTRICT has employed DAWN GALLAGHER in the Transportation Unit, with
    DAWN GALLAGHER being employed as of 2007 and through today and
    continuing, with Dawn Gallagher holding a civil service job title and entitled

to any protections or subject to any legal encumbrances provided for in New York Civil Service Law and under the United States Constitution.

8. On February 1, 2013, BOARD OF EDUCATION OF EAST HAMPTON UNION FREE SCHOOL DISTRICT suspended DAWN GALLAGHER 's employment as a Bus Driver and a Yard Person. A subsequent suspension stayed the payment of her wages as a bus driver, ten hours of overtime a week as "yard person", health insurance availability for her family and the summer employment as a bus driver for the district.

9. The defendant BOARD OF EDUCATION OF EAST HAMPTON UNION FREE SCHOOL DISTRICT on or after February 1, 2013 failed to provide DAWN GALLAGHER due process of law when, on the recommendation of Superintendent of Schools Richard Burns, they suspended her from her job publicly at a school board meeting without giving DAWN GALLAGHER an opportunity to explain or comment on allegations made by the Superintendent of Schools.

10. In his role as Superintendent of Schools for BOARD OF EDUCATION OF EAST HAMPTON UNION FREE SCHOOL DISTRICT, Richard Burns failed to provide due process of law when he suspended DAWN GALLAGHER and recommended Board action suspending DAWN GALLAGHER without giving her an opportunity to explain or comment on allegations made by Richard Burns.

11. In a letter to parents (attached as Exhibit A) Superintendent of Schools Richard Burns publicized that two school district transportation employees were suspended as of February 1, 2013 with "no bearing on the past or current operational safety of our buses, nor is it related to any interaction between our students and our transportation staff".

12. On September 3, 2013, seven months later, BOARD OF EDUCATION OF EAST HAMPTON UNION FREE SCHOOL DISTRICT passed a resolution and withdrew disciplinary charges against DAWN GALLAGHER and "reinstated" her to a civil service position as a Bus Driver.

13. DAWN GALLAGHER was denied the financial and actual medical benefits of the family medical plan she was entitled to under the collective bargaining agreement, salary for the seven months, and the overtime assignments of summer bus runs and yard person duties for the seven months and continuing to date.

14. Under New York State Labor Law Section 704 It shall be an unfair labor practice for an employer to (1) spy upon or keep under surveillance, whether directly or through agents or any other person, any activities of employees or their representatives in the exercise of the rights guaranteed by section

seven hundred three and (8) to discharge an employee because he has given any information or testimony under this article.

15. Under New York State Labor Law Section 703 Employees shall have the right of self-organization to form, join or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in concerted activities, for the purpose of collective bargaining or other mutual aid or protection, free from interference, restraint or coercion of employers.

16. In 2012-2013, Alison Anderson was a member of the BOARD OF EDUCATION OF THE EAST HAMPTON UNION FREE SCHOOL DISTRICT.

17. EDMOND BLETTERMAN served for a period of time, including until September 4, 2012 when his letter of retirement was accepted by the Board of Education as Transportation Dispatcher of the Transportation Unit of the EAST HAMPTON UNION FREE SCHOOL DISTRICT with 2011-2012 salary of $94,033 and was responsible in the chain of command for the assignment of personnel and discretion in the awarding of overtime for bus drivers to handle transportation needs of the district.

18. In 2010, a bus driver employee of the EAST HAMPTON UNION FREE SCHOOL DISTRICT named Gloria Bouchard cursed out an individual and defended herself by indicating she had Tourrete's Syndrome, which she claimed caused her to have uncontrollable impulses.

19. EDMOND BLETTERMAN initiated an inquiry into how it was that a bus driver would be claiming such a condition seemingly inconsistent with any medical screening by the district and was requested by his superiors in the EAST HAMPTON UNION FREE SCHOOL DISTRICT to determine if it was true that a bus driver employed by the school district had a diagnosed condition causing her to have uncontrollable impulses.

20. In response to that investigation, Gloria Bouchard sent a letter to the School District indicating that her resignation from the school district was not due to her cursing out the individual, or due to the supposed Tourrete's Syndrome she had claimed initially, but because of unfairness in the transportation department. This Bouchard letter followed an anonymous letter written by someone with knowledge of the Transportation Department.

21. In response to these letters, the East Hampton Union Free School District completed a 37 person interview process of the transportation unit and other staff conducted by a head of the special education unit and the then Superintendent (Raymond Gualtieri) which determined there were three individuals making complaints which were found by the investigation to be unfounded. Assistant Superintendent Gualtieri made his report to the Board

of Education and indicated that all of the allegations of the anonymous letter are bogus.

22.  After that investigation, BOARD OF EDUCATION OF EAST HAMPTON UNION FREE SCHOOL DISTRICT changed its membership through elections or turnover, and Superintendent Gualtieri moved on from the district, and despite Superintendent Gualtieri's report to the earlier board, BOARD OF EDUCATION OF EAST HAMPTON UNION FREE SCHOOL DISTRICT nevertheless worked to undermine the Transportation Department, failing to support Edward Bletterman and his management of the Transportation unit and the chain of command within the Transportation unit.

23.  When Edmond Bletterman was physically attacked by one bus driver, John Lewis, neither the Board of Education nor the Assistant Superintendent (Isabel Madison) supported Bletterman's demand that Lewis be disciplined.

24.  Instead, the concerted activities of employees of EAST HAMPTON UNION FREE SCHOOL DISTRICT for the purpose of mutual aid or protection free from interference, restraint or coercion of employers were invaded by EAST HAMPTON UNION FREE SCHOOL DISTRICT in this matter in a way which violated DAWN GALLAGHER's rights under clearly established law and violated their federal constitutional rights.

25.  Rather than employ and support managers who could manage, and respect that chain of command supported under the Gualtieri findings, BOARD OF EDUCATION OF EAST HAMPTON UNION FREE SCHOOL DISTRICT failed to support Edward Bletterman, worked to undermine Bletterman's aide Christine Vorphal by instituting charges against Vorphal as well as DAWN GALLAGHER, and hired a local individual with no substantive background in the management of a transportation unit because he would accept an inadequate salary (September 28, 2012 Board of Education meeting Joel Freedman appointed as Head Bus Driver at the annual salary of $60,000) , rejected a qualified male applicant for manager who was actually interviewed and possessed an extensive background in managing a transportation department, and, without a court order providing oversight, inserted an agent provocateur in the transportation department with duties to report back to the Superintendent of Schools Richard Burns and his agents as to confidential and personal interactions of the employees of the transportation department, including DAWN GALLAGHER, and this agent was encouraged to impact the interpersonal relationships of the employees of the district, impair the ability to call colleagues as witnesses in proceedings,  and report on those interactions in violation of New York State Labor Law and federal constitutional standards.

26.  The agent provocateur/employee was surreptitiously provided a separate portfolio with a direct line of contact with Superintendent of East Hampton

Union Free School District Richard Burns bypassing the normal chain of command and providing the Superintendent with the results of this illegal surveillance including summaries of personal interactions involving DAWN GALLAGHER and communications of individuals employed by the school district and represented by the United Federation of Teachers union without the presence of their union representative during these investigatory interviews by the agent provocateur.

27. In a February 28, 2013 email, the Agent Provocateur hereinafter ( ) , acting at the urging of School Board member Anderson and with the encouragement of Superintendent of Schools Richard Burns, emailed Richard Burns and directed that a main office employee in the school district office should be removed from interaction with the transportation unit employees the Agent Provocateur had arranged to come to the district offices

:

> From : (  )
> To:  Burns, Richard
> Subject:  Bus Driver Statements
> Hi  Looking forward to speaking with you all
> tomorrow. I think many drivers will be put at ease, if it's
> possible for Wendy NOT be at the district office
> tomorrow. Some are fearful she will contact George,
> when she sees the drivers coming in. Thank you.

27. In a response the next morning March 1, Superintendent Burns emailed ( )
> From:  Richard.Burns@ehufsd.org
> To: ( )
> Subject: RE Bus driver statements
> ( ) -----
> Moved to hs principal's office

28. In addition to direct contact with the Superintendent at his district email, ( ) also distributed her information to Board Member Alison Anderson and used an email of mj2516@aol.com as a point of contact with the School District outside of her chain of command in Transportation.

29. References to "Dawn" are related to plaintiff "Dawn Gallagher"
References to "Sue" are related to Susan Bogash.
References to "Joel" refer to the local hired to head up the Transportation Unit after Ed Bletterman left the position,  Joel Friedman, variously described as "Head Driver" or "Lead Driver"
References to "Alison" are related to Board of Education member Alison Anderson

30. In a Sunday January 6, 2013 email from ( ) to mj2516@aol.com  Subject: Transportation Dept. , ( ) stated;

"Why does Dawn get so much over-time each week? MECHANICS should be fueling buses. Drivers can start their own buses, if needed." ...Why do Joel, Dawn, Christine and Alida have set parking spots?.....Speaking up is strongly discouraged. Employees are not asked for ideas or suggestions, issues or potential safety concerns. Transportation employees do not go to district office because Wendy Warren is there. There are several drivers who endured terrible conditions because of Ed and "the click". That hasn't gone away. The only difference is they are not cursed and yelled at anymore. "The click" is much nicer because Sandra has made them aware of my friendship with Alison." ...please black out my email address – thanks. "

31. In a Saturday January 12, 2013 email from ( ) to mj2516@aol.com , ( ) stated:

"Can Dawn complete work from 10:30 to 1:30? ...If she comes in @ 6 to start the buses, then she should be able to leave at 4 PM. Is she needed to start the buses? Can drivers do this? What are Dawn's duties?...Should mechanics fuel buses and deal with fuel deliveries? Dawn does these jobs now. ....Joel needs to be an advocate for his drivers!!....Should be checking on drivers. Most do NOT use proper procedures at RR crossings....Joel should be talking to the drivers for info and feed back. He should follow up on issues that arise!...Notice pattern of certain drivers: Christine & Dawn usually have O.T. runs on weekends. Van usually has long distance run."

32. In a January 16, 2013 email from ( ) to RICHARD BURNS,the Superintendent of the East Hampton Union Free School District, ( ) commented on a meeting between ( ) and Burns;

From : ( )
To:  rburns@ehufsd.com
Subject: Transportation
Thank you for this morning's meeting. It was very positive and encouraging. You covered everything. Hopefully there will be positive change. ...

33. In a Saturday January 19, 2013 email, ( ) to mj2516@aol.com, ( ) stated

Hi!  Some info to pass along after my conversation with
Sue.
Joel being set up to fail.
I take this to mean, Joel is going to do this himself
because he listens to Christine & Dawn ALL the time.
THEY control what goes on at Transportation. If a
driver has a question, they radio in to 1 of them, not
Joel.
She said Christine blames Tammy & John D for Ed
leaving. Sue said Christine is the reason Ed left because
he listened to her.
.....Sue said she went to union about being more senior
than Sandra but later changed her mind because she
felt there would be consequences....She said the only
way for things to get better is to break up the click
(sic)...Sue thinks George and Rich Burns are friends.  I
told her they are not....I noticed the click (sic) is being
nicer to me. Sue thinks because they want to make me
part of the group because there (sic) click (sic) is
shrinking (oh,joy!).  I wondered if it's because- if they
make me happy, I'll stop talking."
....My comments...
I wonder how much time is needed to check Christine's
computer? ...Wondering how much you will find....She
got a new district computer. What happened to the old
one? It would probably show more. ....Hope this helps.
P.S. Something drastic REALLY needs to me (sic) done
about the "trio of terror".

34.  In a Sunday January 27, 2013 email to mj2516@aol.com, ( )  asked
"If Rob as union rep, requests o.t. data from payroll, is
he entitled to it?  He's been refused access. ....Sue, at
times, should be getting o.t. and she doesn't put in for it.
Nancy S. may talk. She was abused by click (sic).
...Rhonnie milks the clock on shuttles. What about trips?
Joel should not be given heads up facility.com is coming.
Liz should not tell Rhonnie. You should have 3 e-mails
from me and 1 txt – about transportation."

35. In a Sunday February 3, 2013 email from ( ) to mj2516@aol.com, ( ) stated
Dawn told Sue not to talk to me because I was collecting information. She
said, "do you have something to hide?"  Dawn said "yes".  When Sue talked to
Dawn about Raffael's o.t. , Dawn told her not to open a can of worms.
Sue thinks Eileen might write depos. for district. ..You
need to look at James, Barbara, Rafael, Sandra, George &
Van for "theft of services" too.  Joel is complicite (sic) in

ALL this because he signs off on everyones hours. ...BB
was cleaned up because they knew Facility.com was
coming to inspect. ...Have to get keys back from Dawn
& Christine. Locks should be changed.

36. In a separate February 3, 2013 email from ( ) to RICHARD BURNS ( ) stated;
"Thank you!  To you, Dr. Aman and Alison for meeting
with us on Thursday night. I'm very grateful for your
time, effort and actions being taken to improve the
Transportation Dept."

37. In a Tuesday February 19, 2013 email from ( ) to mj2516@aol.com, ( )
stated;

"Mike telling drivers "We have a spy among us" telling
drivers "It's Karin. Sandra telling drivers Karin had Van
suspended because he said "fuck" at driver's meeting on
Fri morning.  Reminder about George Warren taking off
this week when he is not suppose (sic) to.  Other drivers
have to cover his run Tues-Fri incurring additional O.T.
...Could district PLEASE dismantle Christine's entire
area (desk, lights. Etc.) once she is terminated??"  "Signs
posted 'No trespassing" or "Employees only" or
something like that. Suspended employees are not to be
at Transportation.  Ed & his wife not welcome at
Transportation."  I hope some of this is helpful. ...Good
luck at your meeting. "

38. In a Wednesday March 13, 2013 from ( ) to Superintendent Richard Burns, (
) stated;

"Hi Rich! We're hoping things are progressing with
termination for the suspended employees. Things here
are still not good with Joel in charge and the trouble
makers still stirring things up.  There are a few who
keep in contact with Christine & Co. ...We are anxiously
waiting for positive change. Is it possible to transfer Joel
out of Transportation.  Many of us feel , he will be a
huge problem also when he returns to driving full time.
He knows too much personnel info on all of us. He told a
driver he resigned because he got no support from us or
district.  He was planning on appointing someone to be
second in command! Ha! Take your pick.  Anyway, the
natives are restless.  Hope we can move forward soon. "

39. Superintendent Burns responded an hour later;

I know it seems like such a long time. ...we are making good progress today...please try to hang in there...changes are coming.  Richard J. Burns Superintendent of Schools East Hampton Union Free School District"

40.  In a July 9, 2013 email from ( ) to ROB , ( ) stated;

"More important, drivers are afraid Rich will shut down Transportation, and we all loose (sic) our jobs!! Rich told us this @ our 1st meeting!"  We took a HUGE leap of faith , he would clean things up & fix things. Not feeling confident these days." ...Last thing. Don't understand why Rich never spoke with driver whi (sic) had C &D show up @ the driver's home! The driver left 2 mssgs for ..." (C & D refer to Christine Vorphal and Dawn Gallagher).

## FIRST CAUSE OF ACTION FOR DAWN GALLAGHER FOR PROCEDURAL DUE PROCESS VIOLATION

41. An employee is entitled to be given information concerning charges sufficient to permit him or her to adequately prepare a defense.

42. Where corruption, fraud or misconduct assists the government in procuring charges or an award, the government action should be vacated.

43. Prejudice so permeating a process may render it unfair and unconstitutional government action, and the actions of the defendant as outlined herein constitute a procedural due process violation.

44. On February 1, 2013, BOARD OF EDUCATION OF EAST HAMPTON UNION FREE SCHOOL DISTRICT suspended DAWN GALLAGHER on four charges and specifications, all of which were unfounded in fact and law, all of which stem from the hearsay and innuendo put forward by the Board's operative ( ).

45. On September 3, 2013, BOARD OF EDUCATION OF EAST HAMPTON UNION FREE SCHOOL DISTRICT passed a resolution and withdrew disciplinary charges against DAWN GALLAGHER and 'reinstated" her to a civil service position as a Bus Driver without disclosing the existence of ( ) or ( )'s writings.

46. In the first charge and specifications, which accompanied her suspension on February 1, 2013, DAWN GALLAGHER was alleged to have management duties with regard to distribution of school bus overtime runs.

47. DAWN GALLAGHER had never had any management duties with regard to bus overtime runs, and the charges belied an ignorance of or deliberate indifference to the historical record as well as the discretion granted to managers to control and assign overtime duties.

48. If DAWN GALLAGHER had been a manager of bus overtime runs, she would have had discretion as a manager to assign overtime runs. If the union had a collective bargaining agreement in which overtime is to be assigned on a strict seniority basis, that would be an issue for the union to consider as to whether to grieve a certain process of awarding overtime runs.

49. Prior to 2006, EAST HAMPTON UNION FREE SCHOOL DISTRICT managers Julliette Parker and Stacey Dunham were using their managerial discretion in giving all of the overtime trips in the EAST HAMPTON UNION FREE SCHOOL DISTRICT to a certain limited group of drivers.

50. In 2006, Edmond Bletterman was hired by the EAST HAMPTON UNION FREE SCHOOL DISTRICT to manage the Transportation of students in the East Hampton Union Free School District.

51. Edmond Bletterman as the new manager of Transportation recognized that he continued to have full discretion to assign overtime runs, but presented a few different ways this issue of overtime bus runs could be handled to the drivers.

52. Mr. Bletterman suggested different rotational assignment boards for different events, and that suggestion was deemed too complicated by an advisory vote of the bus driver employees.

53. Mr. Bletterman retained the discretion to use the managerial capacity to assign overtime (restricted only by any applicable seniority provisions in the Collective Bargaining Contract the union saw fit to grieve) , but provided a second option for the bus drivers.

54. Mr. Bletterman suggested a different rotational assignment board for weekends only. This suggestion was also turned down by the bus drivers as it would unfairly give those on both boards an unfair advantage of being assigned two trips in a week.

55. Mr. Bletterman retained the discretion to use the managerial capacity to assign overtime (restricted only by any applicable seniority provisions in the

Collective Bargaining Agreement the union saw fit to grieve), but provided a third option for the bus drivers.

56. The single board system actually in use in 2013 was at management's discretion, but Mr. Bletterman allowed the bus drivers to vote on and indicate their approval of the rotational system for most trips during the academic school year (summer bus system was a separate voluntary classification) to the next person in line who accepted the overtime assignment.

57. There was never any mandate that any person accept any overtime transportation assignments for these events, as they involved extra demands beyond the normal daily assignments.

58. Management retained the right to assign overtime as it saw fit, (subject to any seniority provisions in the Collective Bargaining Agreement the Union saw fit to grieve) but the single board system provided a general structure which the Bletterman management used as a starting point.

59. The sports trips reported by the school athletic director on Friday for the next week would be put on the board and drivers assigned in order from the seniority board, then any field trips would be added and drivers assigned beginning with next person up on the seniority board. Drivers could do local trips only or weekend only trips, whatever worked with their personal schedule. DAWN GALLAGHER was simply not involved in this management decision as a manager.

60. Trips, which were cancelled, meant the driver assigned lost out, but had the assignment for a rescheduled date, if it was within a week. Trading of trips was allowed where there was an exchange for another trip. If there was no trade, the trip went to the next person on the board. Trips to New York City and upstate were assigned outside this system to experienced coach drivers in the best interests of student safety and the interests of the school district. Management discretion and prerogatives were always preserved.

61. After beginning her employment with EAST HAMPTON UNION FREE SCHOOL DISTRICT in 2007, DAWN GALLAGHER began helping School District employee JOHN LEWIS in 2009 in fueling buses, assigning specific buses to be used for sports and field trips, checking fluid levels of buses, starting the route buses in the morning , taping ripped school bus seats, removing graffiti from the seats, and ordering supplies needed for the buses such as garbage bags and tissues. Assigning of certain buses to be used for certain trips was in no way designating any overtime assignment.

62. In 2010, after JOHN LEWIS suffered health issues and remained out of work with a knee rehabilitation, DAWN GALLAGHER took over the additional

duties of the position, which was designated as "yard person." The position came with two hours of overtime daily over and above DAWN GALLAGHER's salary as a bus driver. When John Lewis returned to full time work as a bus driver, he agreed with Edward Bletterman that with his age and state of health DAWN GALLAGHER was a better choice for the "Yard Person" duties. A large part of "overtime" pay to DAWN GALLAGHER was actually the "Yard Person" two hours of overtime pay allotted to the Yard Person each day.

63. Part of the duties of "yard person" included managing the parking of all the different vehicles to allow those needing to be fueled to be on the outside of the parking grid so as to allow for them to be moved for fueling without the movement of unnecessary vehicles.

64. SUSAN BOGASH and DAWN GALLAGHER had a close relationship in the years from 2007 up to 2013, with the two traveling together to Florida in June 2012, having manicures and lunch together, and Susan Bogash making her cell phone part of DAWN GALLAGHER's cell phone plan and actually residing for a time as a tenant in DAWN GALLAGHER's home when she had nowhere else to live.

65. Susan joined Dawn's family for Christmas dinner in December 2012.

66. SUSAN BOGASH was nicknamed 'Ding" by DAWN GALLAGHER for the Edith Bunker character in All in the Family for her forgetful nature, with SUSAN BOGASH often leaving behind car keys, cell phone, even credit cards and her wallet in different buses.

67. DAWN GALLAGHER was not responsible for the lining of the parking lot spaces for bus parking, the area being the parking area for the Schaeffer Bus Company, which had previously occupied the Bus Barn and the parking areas.

68. The parking spaces were all tight for almost all of the buses. The width of a 66-passenger FS-65 is roughly 113 inches wide from mirror to mirror, with the 66 passenger SAF-T liner C2 being roughly 116 inches from mirror to mirror.

69. The spaces at the bus barn are roughly 117 inches inside the lines. If measured from outside the lines the outside measurements are roughly 126 inches.

70. REGINA ASTOR was a driver employed the EAST HAMPTON UNION FREE SCHOOL DISTRICT with a poor driving ability and record.

71. Although she had at one point operated a full sized 66 passenger bus, because of mishaps in the 66 passenger bus Regina Astor had been placed in a mini van and then to the non driver position of bus matron.

72. Mini vans were not assigned specific parking spots, as those locations were first-come first-served.

73. Under clearly established law, DAWN GALLAGHER and EAST HAMPTON UNION FREE SCHOOL DISTRICT were governed by a 30-day limitation on suspensions without pay as their relations were governed by a Collective Bargaining Agreement, which did not reject the clearly established law which mandated that due process protections must include notice and the opportunity for the employee to respond to present reasons why the suspension should not be imposed.

74. New York Civil Service Law Section 75 (3) ensures an employee a hearing within 30 days of the employee's suspension.

75. New York Civil Service Law Section 75 provides that an employee not provided a hearing within 30 days of the employee's suspension be restored to his or her position with full pay for the period of suspension.

76. Under Civil Service Law Section 75, public employees are entitled to full back pay when the allegations are withdrawn.

77. DAWN GALLAGHER was never provided her back pay for the "Bus Driver" position from February 1, 2013 to September 3, 2013, including overtime and duties during the summer 2013 season.

78. DAWN GALLAGHER was never provided her back pay for the 'yard person" responsibilities from February 1, 2013 through to present, and was terminated from that employment by EAST HAMPTON UNION FREE SCHOOL DISTRICT.

79. DAWN GALLAGHER has continued her employment with EAST HAMPTON UNION FREE SCHOOL DISTRICT as a full time bus driver from 2007 to present and continuing, yet the due process violations arising from the unconstitutional violations of her privacy, freedom of association, free speech and freedom of assembly rights, the consequential illegal charges and suspension without pay all comprise procedural due process violations.

80. DAWN GALLAGHER was suspended without pay prior to the defendant BOARD OF EDUCATION OF THE EAST HAMPTON UNION FREE SCHOOL DISTRICT providing her an opportunity to respond to the charges filed against her prior to her suspension.

81. DAWN GALLAGHER was suspended for seven months with no pay and continues to suffer loss from the termination of certain job duties with hearing made available to her at any time.

82. Such action by the defendant constitutes a deprivation of procedural due process rights of plaintiff DAWN GALLAGHER.

83. An employee of a public entity is entitled to union representation during any investigatory interviews, and the actions of ( ) in targeting DAWN GALLAGHER in interviewing employees at the behest of the defendant without any union representation was a violation of DAWN GALLAGHER's procedural due process rights.

84. DAWN GALLAGHER makes claim herein for back pay and front pay in the amount of $150,000 (ONE HUNDRED AND FIFTY THOUSAND DOLLARS) and compensation for the pain, suffering and loss of enjoyment of life and other damages and special damages in the amount of $850,000 (EIGHT HUNDRED AND FIFTY THOUSAND DOLLARS), together with the costs, disbursements and attorneys fees under 42 USC 1988 incurred herein.

SECOND CAUSE OF ACTION FOR DAWN GALLAGHER FOR FOURTEENTH AMENDMENT SUBSTANTIVE DUE PROCESS VIOLATIONS BY DEFENDANT BOARD OF EDUCATION OF THE EAST HAMPTON UNION FREE SCHOOL DISTRICT

85. The Fourteenth Amendment protects public employees including DAWN GALLAGHER from arbitrary and capricious government action affecting their employment.

86. The underlying facts outlined hereinabove raise important interests that have been accorded the protection of substantive due process.

87. Substantive due process protects individuals against government action that is arbitrary, conscience shocking or oppressive in a constitutional sense, and government action might be so arbitrary that it violates substantive due process regardless of the fairness of procedures used.

88. A lengthy suspension without pay resulting from an arbitrary and capricious exercise of public school boards' power herein resulted in a substantive due process violation.

89. The right at issue, continued employment for a permanent public employee, is not a simple state contractual right unworthy of substantive due process protection.

90. As a result of the above described facts, DAWN GALLAGHER has been deprived of substantive due process rights under the Fourteenth Amendment.

91. As a result thereof, DAWN GALLAGHER seeks compensatory damages as against BOARD OF EDUCATION OF THE EAST HAMPTON UNION FREE

SCHOOL DISTRICT in the amount of ONE MILLION DOLLARS ($1,000,000),
together with the costs, disbursements and attorneys fees pursuant to 42
USC 1988 incurred herein.

### THIRD CAUSE OF ACTION FOR DAWN GALLAGHER FOR FIRST AMENDMENT FREEDOM OF ASSOCIATION, ASSEMBLY AND FREEDOM OF SPEECH VIOLATIONS AS AGAINST BOARD OF EDUCATION OF EAST HAMPTON UNION FREE SCHOOL DISTRICT

92. Individuals draw much of their emotional enrichment from close ties to others. Protecting those relationships from unwarranted state interference safeguards the ability independently to define one's identity that is central to any concept of liberty.

93. In the East Hampton School District in 2013, bus drivers were part of a union under the United Federation of Teachers, and there was a Collective Bargaining Agreement between the union and the BOARD OF EDUCATION OF EAST HAMPTON UNION FREE SCHOOL DISTRICT.

94. Rather than deal with the union as the legal representative of the bus drivers, the BOARD OF EDUCATION OF EAST HAMPTON UNION FREE SCHOOL DISTRICT followed a pattern and practice of unfair labor practices and illegal conduct meant to undermine the union rights of the bus drivers and the freedom of association, assembly and freedom of speech rights of the bus drivers.

95. The use of ( ) by the BOARD OF EDUCATION OF EAST HAMPTON UNION FREE SCHOOL DISTRICT involved surveillance of all of the most intimate conversations involving DAWN GALLAGHER and her colleagues in both on duty and off duty conversations and interactions as outlined hereinabove.

96. On February 1, 2013, the EAST HAMPTON UNION FREE SCHOOL DISTRICT preferred disciplinary charges as against DAWN GALLAGHER and suspended her.

97. The suspension from her duties as a bus driver continued through and including September 2013.

98. The charges and the suspension without pay were meant to intimidate DAWN GALLAGHER and her co-workers and suppress her rights to First Amendment expression, assembly and freedom of association and the rights to First Amendment expression and freedom of association of all of the employees of EAST HAMPTON UNION FREE SCHOOL DISTRICT.

99. On February 1, 2013, EAST HAMPTON UNION FREE SCHOOL DISTRICT terminated the position of DAWN GALLAGHER as "yard person" resulting in

her loss of employment as the "yard person" position with the subsequent loss of income of two hours of overtime per day for the more than three years since that date and continuing.

100.     SUSAN BOGASH and DAWN GALLAGHER had been friends since DAWN GALLAGHER started working for the School District in 2007.

101.     The pattern and practice of the EAST HAMPTON UNION FREE SCHOOL DISTRICT in violation of clearly established law was meant to undermine the rights of DAWN GALLAGHER and other employees of EAST HAMPTON UNION FREE SCHOOL DISTRICT which included

    a) Intentionally seeking to undermine the friendship of DAWN GALLAGHER with SUSAN BOGASH and other co-workers as a method of destroying the freedom of association rights of DAWN GALLAGHER, Susan Bogash and other EAST HAMPTON UNION FREE SCHOOL DISTRICT employees;

    b) failing to include direct management and union representatives on employee interviews by EAST HAMPTON UNION FREE SCHOOL DISTRICT administrators including Superintendent Richard Burns and his agents and employees including the Agent Provocateur indicated herein as ( ) ;

    c) Encouraging communication and correspondence bypassing direct management and union representation through email and texts and employee interviews between employees including the Agent Provocateur indicated herein as ( ) and EAST HAMPTON UNION FREE SCHOOL DISTRICT administrators which eroded personal relationships of and between employees and erased normal chain of command and managerial structure allowing crony channels of communication which bypassed immediate management and created a climate of fear and a specific objective breach of intimate relationships and illegal disclosures to administration of the intimate feelings of subordinate employees;

    d) the hiring of an individual identified herein as ( )  with the condition that the individual serve in the Transportation Department as a source of information obtained from personal communications between bus drivers employed at the "Bus Barn" for board of education members and administrators useful as against DAWN GALLAGHER and interfering with the New York State Labor Law and federal constitutional

rights of DAWN GALLAGHER and other employees of
the EAST HAMPTON UNION FREE SCHOOL DISTRICT;

e) Issuing illegal and overbroad no trespass orders
alleging that the EAST HAMPTON UNION FREE
SCHOOL DISTRICT prohibited suspended or
terminated employees from entering school grounds
up to and including picking up children or watching
children in sporting contests and publishing such no
trespass orders to local law enforcement in order to
chill the exercise of First Amendment rights to speech,
assembly and association and to stigmatize the
employee and restrain their abilities to communicate
with or interact with friends, parents, co-workers and
fellow employees, including DAWN GALLAGHER, who
had information relevant to their matters (the buses
would be located at school building driveways with the
drivers holding conversations during extended periods
of time they were not present at the Bus Barn or
transporting students).

f) Suppressing the freedom of expression of employees of
the EAST HAMPTON UNION FREE SCHOOL DISTRICT
on matters of public concern by illegal surveillance of
the activities of public employees in intimate settings
both inside and outside any work location and
restraining the speech of employees on matters of
public concern by the threat of individual suspensions
and terminations and termination of the public nature
of the transportation system if the cronyism in hiring,
inadequacy of transportation management salary
structure resulting in inadequate crony hiring, safety
issues with regard to specific driver inadequacies, and
the surveillance on employees intimate conversations
were all brought to the fore by an open and honest
public conversation, conversations suppressed by the
actions of the defendant herein.

g) The actions of the defendant had the likely effect of
ending intimate relationships between DAWN
GALLAGHER and her colleagues in the employ of the
defendant; the actions of the defendant had the
intended purpose of affecting those relationships, and
the actions of the defendant were an arbitrary and
undue intrusion by the government into those
relationships.

102.    Rather than providing for freedom of speech on matters of public
concern and freedom of association and assembly for employees of the

district, BOARD OF EDUCATION OF EAST HAMPTON UNION FREE SCHOOL DISTRICT looked to control that outcome by suppressing constitutional rights of the employees of the district and unlawfully controlling the information and the sources of information the public would be exposed to on matters of public interest. The defendant intentionally suppressed all of this information.

103.     These illegal actions served to further suppress the freedom of association and freedom of speech rights of all employees of the district including DAWN GALLAGHER, chilled the exercise of DAWN GALLAGHER's First Amendment rights,  discouraged all employees and former employees on utilizing their First Amendment protected rights and were motivated or substantially caused by the BOARD OF EDUCATION OF EAST HAMPTON UNION FREE SCHOOL DISTRICT intent to destroy the intimate relationship of DAWN GALLAGHER and her colleagues in order to refashion and reorder the Transportation Department through internal chaos and dissension.

104.     BOARD OF EDUCATION OF EAST HAMPTON UNION FREE SCHOOL DISTRICT actively plotted with ( ) to undermine the defense of the Christine Vorphal disciplinary hearing starting in February 2013 by actively undermining the defense ability to call DAWN GALLAGHER and other present and former employees of the Transportation Department and actively running ( ) as an active government directed surveillance and suppression of the preparation of  defense witnesses without dislosing ( ) as a government agent.

105.     ( ) was hired by the BOARD OF EDUCATION OF EAST HAMPTON UNION FREE SCHOOL DISTRICT in 2012 with the official civil service designation of full time Bus Driver.

106.     Despite that designation, the BOARD OF EDUCATION OF EAST HAMPTON UNION FREE SCHOOL DISTRICT anticipated that ( ) would also serve as a source of intimate conversation and communications by and between union employees of the district without the permission or consent of the union and without a court order to authorize and oversee the government invasion of privacy interests and freedom of association, assembly and speech on matters of public concern and intimate association of DAWN GALLAGHER and other employees of the school district.

107.     When ( ) continued to supply this information to Superintendent Richard Burns following the suspension of DAWN GALLAGHER and during disciplinary proceedings involving a fellow employee and Transportation Department manager named Christine Vorphal ( In the Matter of the Charges Preferred by East Hampton Union Free School District , Complainant – against- Christine Vorphal, Respondent; Testimony taken April 24, 2013 and May 2, 2013),  Richard Burns was present in the hearing room when calls for

production of documents created by Susan Bogash and produced to and discussed with Superintendent Burns were called for by counsel for Vorphal. (May 2, 2013 at pages 732).

108.　　Counsel for the District indicated he had not seen the document which Bogash testified she "brought it in an envelope and I handed it to Mr. Burns" and the hearing officer indicated he would deem Bogash' cross remain open. (Transcript page 733) and have the Bogash document produced before the next hearing date (Transcript page 746).

109.　　At this point, Superintendent Richard Burns was in possession of reports from ( ) detailing Susan Bogash's intimate conversations with her. Initial questioning by counsel for Vorphal as to ( ) had been met by an objection by counsel for the School District and sustaining of the objection by the hearing officer (May 2, 2013 transcript at page 617-618 Cross of Coviello).

110.　　As of May 2, 2013, the emails from ( ) were no longer an asset to EAST HAMPTON UNION FREE SCHOOL DISTRICT, as disclosure of the existence of their arrangement with ( ) was becoming ever more likely.

111.　　In addition, the Vorphal defense had opened the disciplinary hearing testimony to the public, and the hearing was well attended, ensuring that any disclosure of the ( ) emails to Superintendent Burns and other agents and employees of the school district had a very real possibility of being disclosed and subject to testimony if ( ) was called to the stand, a very real possibility as ( ) had been listed by the Board of Education as a potential witness.

112.　　Superintendent Burns was also awaiting cross on his testimony, which included vague admissions he made on direct as to having notes he had taken on individual interviews with prospective Board of Education witnesses appearing on the Board's witness list in the Vorphal disciplinary hearing (April 24, 2013 transcript, pages 317-353). These witnesses listed included ( ).

113.　　Superintendent Burns and the Board of Education faced the prospect of continuing development of the record on the Vorphal proceeding in public, and the disclosure of the ( ) portfolio including the ( ) email chains.

114.　　Instead of continuing with the Vorphal proceeding, the Board sought and completed a settlement with Vorphal. The Board of Education then dropped the disciplinary charges against Dawn Gallagher in September 2013.

115.　　Then the Board, on October 2, 2013, terminated ( ) 's employment.

116.    ( ) , induced into this dual portfolio to obtain a full time bus driver position , was seemingly terminated in violation of ( ) due process rights and in violation of New York State Labor Law for offering testimony on materials, a category made a specific part of the Labor Law 704 prohibition on termination of employees.

117.    This action by the BOARD OF EDUCATION OF THE EAST HAMPTON UNION FREE SCHOOL DISTRICT is in seeming violation of ( )'s rights under the First Amendment and Fourteenth Amendment for freedom of speech on matters of public concern, freedom of assembly and freedom of association as well as New York State Labor Law.

118.    ( )'s termination followed a set piece in the Transportation Department where ( ) was used as the focus point of a meeting, and when ( ) indicated that ( ) was not interested in commenting on a certain aspect or management process during the meeting ( ) was subjected to disciplinary procedures which included firing. The proceeding against ( ) was a counterpoint to the illegal and unconstitutional urging and assurances of the school district to have ( ) forward ( ) observations of intimate conversations and asides outside chain of command to the Superintendent and Board of Education members up to a point before that meeting, and is conduct by the school district specifically made illegal by New York State Labor Law 704 and the protections of the 14th Amendment.

119.    As a result of the above, DAWN GALLAGHER was caused to suffer chilling of her First Amendment rights, loss of employment, salary and further income arising from her employment, loss of accrual of time in the New York State pension system, loss of health insurance benefits for herself and her family, pain and suffering, loss of enjoyment of life and consequential damages in the amount of One Million Dollars ($1,000,000) together with the costs and disbursements and attorneys fees of this action under 42 USC 1988.

WHEREFORE;

 plaintiff DAWN GALLAGHER seeks recovery in her First Cause of Action as against BOARD OF EDUCATION OF EAST HAMPTON UNION FREE SCHOOL DISTRICT in the amount of $1,000,000 (ONE MILLION DOLLARS), together with the costs and disbursements of this matter and attorneys fees pursuant to 42 USC 1988;  and

plaintiff DAWN GALLAGHER seeks recovery in her Second Cause of Action as against BOARD OF EDUCATION OF EAST HAMPTON UNION FREE SCHOOL DISTRICT in the amount of $1,000,000(ONE MILLION DOLLARS) together with the costs and disbursements of this matter and attorneys fees  pursuant to 42 USC 1988 ;

Dated: August 10, 2016

LAWRENCE ELLIS KELLY   LK 7072
Attorney for Plaintiff
Dawn Gallagher
11 Cedar Bay Court
Bayport New York  11705
631 472 0890

EXHIBIT A

Dear Parents and Staff:

As you may have learned, two of our school district transportation employees were suspended as of February 1, 2013. On February 15, 2013, an additional 3 transportation department employees were suspended. I want to assure that this action has no bearing on the past or current operational safety of our buses; nor is it related to any interactions between our students and our transportation staff.

The issues relate to personnel/workplace matters. I am not at liberty to comment further relating to the specifics of these "employee issues," but rest assured that the District's actions have no connection to our students or instructional staff.

As this is an ongoing investigation, the District will keep you apprised of any new developments which we are legally able to share.

I thank you for your understanding and patience.

Sincerely,

RICHARD J. BURNS
Superintendent of Schools